UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALBERT J. MARANO, M.D., and          :
ALBERT J. MARANO, M.D., INC.,        :
          Plaintiffs,                :
     v.                              :          C.A. No. 12-639ML
                                     :
RBS CITIZENS FINANCIAL GROUP,        :
INC., and STEPHEN MARANO,            :
          Defendants.                :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

At the core of this removed case is a scheme that began in 2006, whereby Defendant

Stephen Marano ("Stephen") fraudulently converted checks payable to his brother Albert

Marano, M.D., ("Albert") and his brother's medical practice, Albert Marano, M.D., Inc.

(collectively, "Plaintiffs").  The Complaint alleges that Stephen illicitly deposited the checks and

spent the funds without authorization, using an account at Defendant RBS Citizens, N.A.[1]

("Citizens").  The embezzlement went undetected for many years.  After it was exposed by an

audit, Plaintiffs initiated this suit.  As so often happens in such cases, the putative thief Stephen

has defaulted; the gravamen of the claim is targeted at Citizens, which Plaintiffs seek to hold

responsible for their losses under the Uniform Commercial Code ("UCC"), among other theories.

Before the Court is Citizens' Motion for Partial Judgment on the Pleadings (ECF No. 3),

which has been referred to me for report and recommendation.  The Motion is narrowly focused

on the three-year statute of limitations applicable to the conversion of checks under the UCC.

Pivotal to the interpretation of the UCC statute of limitations is the continuing viability of the

Rhode Island Supreme Court's 1977 decision in Fuscellaro v. Industrial National Corp., 368

---

[1] In the Notice of Removal, Defendant RBS Citizens, N.A., states that it was incorrectly named in the Rhode Island Superior Court complaint as "RBS Citizens Financial Group. Inc."  ECF No. 1.

A.2d 1227, 1231-32 (R.I. 1977), which held that the statute of limitations begins to run on each transaction from the moment each converted check is cashed by the bank without regard to when the victim actually discovered the conversion.  Plaintiffs argue that, if faced with the issue today, the Rhode Island Supreme Court would overrule Fuscellaro, holding instead that the statute of limitations does not begin to run either until the embezzlement is discovered or until the last converted check is cashed under a continuing tort theory.

After briefing and argument, but while this Motion was under advisement, Plaintiffs moved to voluntarily dismiss Count IV of their Complaint, the only claim based on federal law. On the same day, they also asked this Court to remand the remaining claims to the Rhode Island Superior Court upon the granting of the motion to voluntarily dismiss because, they argue, the elimination of Count IV will strip this Court of subject-matter jurisdiction.  As a result of these developments, the Court is acutely mindful of the principles of comity and federalism, which are always implicated when the federal court strives to make an informed prophecy of what the state's highest court would do if facing the same question, especially where Plaintiff so clearly wishes to have this state law question decided by the state court.  Nevertheless, this Court has jurisdiction over the matter and the parties, and the Court have invested substantial efforts in briefing and arguing this issue.  More importantly, it appears beyond cavil that the Rhode Island Supreme Court would not abrogate Fuscellaro.  Therefore, I recommend that Citizens' Motion for Partial Judgment on the Pleadings be GRANTED.  While Plaintiffs may continue to prosecute their claims, the UCC statute of limitations cuts off their ability to recover for converted checks cashed at Citizens more than three years prior to filing suit.

I.    **FACTS AND PROCEDURAL HISTORY**[2]

From 2006 to April 2012, Albert employed Stephen as the business manager of his

medical practice.  Compl. ¶¶ 9-10, ECF No. 1-2.  Stephen's responsibilities included

bookkeeping and accounting, which gave him access to Plaintiffs' checks, accounts and financial

records and made possible the conversion of Plaintiffs' funds, which Stephen used to fuel his

gambling habit at Mashantucket and Foxwoods Casinos.  Id. ¶¶ 36, 86-88.  All told, Stephen

misappropriated over $1 million from his brother and the medical practice by cashing checks,

writing checks to himself and third parties, and paying third parties "directly by check and by

wire transfers."  Id. ¶¶ 36, 40, 43.

Stephen used his personal account at Citizens to facilitate the scheme, which proceeded

in two phases.  Id. ¶¶ 8, 11, 13, 16.  The first phase, from December 5, 2006, to September 10,

2007, involved the illicit deposit of Plaintiffs' checks into Stephen's personal checking account.

Id. ¶¶ 12-13.  The payee on these checks was either Albert or Albert J. Marano, M.D., Inc., or

both; nevertheless, Citizens accepted the checks for deposit into Stephen's personal account

without Plaintiffs' authorization.  Id. ¶¶ 14, 48.

The second phase began on September 11, 2007, when Stephen purported to turn the

personal account into a joint account, with Albert listed as a co-owner, by forging his brother's

name on the signature card.  Id. ¶¶ 15, 20.  Stephen continued to deposit checks made out to

Albert and the medical practice into the phony joint account without Plaintiffs' authorization

until April 5, 2011.  Id. ¶ 16.

At some point in time unspecified by the Complaint, Albert learned of the embezzlement

from an accountant hired to audit his business.  Id. ¶ 33.  He continued unaware of the joint

---

[2] These are the facts from Plaintiffs' Complaint, which are taken as true for purposes of a motion for judgment on the pleadings.

account until April 2012, when he visited a Citizens branch and learned that there was a "second account" into which business checks were being deposited; he immediately shut it down.  Id. ¶¶ 34-35.

On August 10, 2012, Plaintiffs brought suit against Stephen and Citizens in Rhode Island Superior Court.  The Complaint asserts the following claims against Citizens:

Count I:    Conversion under the UCC, based on acceptance and negotiation of Plaintiffs' checks and the creation of the joint account;

Count II:   Common-law negligence based on acceptance and negotiation of Plaintiffs' checks, the creation of the joint account and its use to convert funds;

Count III:  Common-law breach of contract based on acceptance and negotiation of Plaintiffs' checks, the creation of the joint account and its use to convert funds;

Count IV:   Violation of the Bank Secrecy Act, 31 U.S.C. § 5318, based on the failure to adhere to minimum standards in connection with the creation of the joint account; and

Count VI:   Violation of R.I. Gen. Laws §§ 9-1-2 and 11-41-3, for civil liability based on criminal conversion.

Counts V and VI assert claims against Stephen for embezzlement and fraudulent conversion and civil liability based on criminal conversion respectively.

Citizens removed the case on September 10, 2012, invoking this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  It answered and filed a Motion for Partial Judgment on the Pleadings (the "Motion").  A hearing was held on November 14, 2012, and the parties were permitted to submit additional written arguments.  The Motion is now ripe for decision.

## II.   **STANDARD OF REVIEW**

Fed. R. Civ. P. 12(c) permits a party to move for judgment on the pleadings, after the pleadings are closed.  Judgment on the pleadings represents an early assessment of the merits of

the case.  Rivera-Gomez v. De Castro, 843 F.2d 631, 635 (1st Cir. 1988).  Therefore, the facts contained in the pleadings are taken as true, construed in the light most favorable to the non-moving party.  See Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007); R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  There is no resolution of contested facts on a Rule 12(c) motion; a court may enter judgment on the pleadings only if the non-moving party's factual averments conclusively establish the movant's request for judgment.  R.G. Fin. Corp., 446 F.3d at 182.  To survive a motion for judgment on the pleadings, the non-movant must plead facts that raise a right to relief above the speculative level, such that entitlement to relief is plausible.  Citibank Global Mkts., Inc. v. Rodriguez Santana, 573 F.3d 17, 23 (1st Cir. 2009).

The affirmative defense of the statute of limitations is properly asserted in a Rule 12(c) motion.  See Shay v. Walters, No. 12-1494, 2012 WL 6577207, at *1-3 (1st Cir. Dec. 18, 2012) (granting judgment on the pleadings based on statute of limitations defense); Cholopy v. City of Providence, 228 F.R.D. 412, 413-14 (D.R.I. 2005) (same).  When a Rule 12(c) motion is based on an affirmative defense as the statute of limitations, a motion for judgment on the pleadings is granted when (1) the defense is definitely ascertainable from the complaint, and (2) the factual averments establish the affirmative defense with certitude.  See Citibank Global Mkts., Inc., 573 F.3d at 23.  Judgment on the pleadings based on the statute of limitations is appropriate when the pleadings, construed in the light most flattering to the non-moving party, leave no plausible basis for believing that the challenged claim is timely.  Erlich v. Ouellette, Labonte, Roberge & Allen, P.A., 637 F.3d 32, 35 n.4 (1st Cir. 2011); see Gonzalez Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).  Rule 12(c) is a useful tool to narrow pretrial issues, even where only partial judgment may be

appropriate.  McLaughlin Transp. Sys., Inc. v. Rubinstein, 390 F. Supp. 2d 50, 57 (D. Mass. 2005); see also City of Bangor v. Citizens Commc'ns. Co., 532 F.3d 70, 78-79 (1st Cir. 2008).

## III.   DISCUSSION

Citizens argues that all claims based on converted checks deposited at Citizens prior to August 10, 2009, are time barred based on the three-year statute of limitations in Article 3 of the UCC.  R.I. Gen. Laws § 6A-3-118(g).  The Motion does not seek to dismiss any of the Counts of the Complaint in their entirety, but rather challenges each claim to the extent that it is based on Citizens' alleged conversion of checks more than three years prior to the filing of suit.

Plaintiffs counter that the statute of limitations should be tolled by the so-called "discovery rule," because Plaintiffs did not discover Stephen's conversion until their accountant discovered irregularities at a later time.[3]  Plaintiffs also argue that the conversion was a continuing tort and should be treated as one operative event that did not ripen for statute of limitations purposes until the last act of conversion on April 5, 2011.  Finally, Plaintiffs ask this Court to certify the question to the Rhode Island Supreme Court because state law does not provide this Court with controlling precedent on the application either of the discovery rule or of the continuing tort theory to conversion claims under the UCC.

### A.   The Discovery Rule

The Rhode Island Supreme Court has consistently held that the discovery rule is reserved for "narrowly circumscribed factual situations" when the fact of the injury is unknown to the plaintiff such that the applicable statute of limitations is tolled until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or the wrongful conduct.  Mills v.

---

[3] The Complaint does not reveal when the accountant's audit alerted Plaintiffs to Stephen's embezzlement scheme. However, it permits the inference that the discovery was made some time between the last deposit in April 2011 and the discovery of the phony joint account in April 2012.  Therefore, the discovery appears to have been made well inside of the three-year statute of limitations.

Toselli, 819 A.2d 202, 205 (R.I. 2003) (per curiam) (quoting Martin v. Howard, 784 A.2d 291,

299 (R.I. 2001)).  The discovery rule undermines the certainty and finality that is at the core of

statutes of limitations.  See Fuscellaro, 368 A.2d at 1231.  In recognition of the importance of

that interest, the Rhode Island Supreme Court has cabined its application to injuries that, by their

nature, may be "latent or undiscoverable" by the victim for a period of time.  Sharkey v. Prescott,

19 A.3d 62, 66, 68 (R.I. 2011) (declining to apply discovery rule to legal malpractice based on

alleged error in the language of the instrument); Anthony v. Abbott Labs., 490 A.2d 43, 46-47

(R.I. 1985) (based on careful balancing, holding discovery rule applies to drug products liability

cases where injury is latent and unknowable); Lee v. Morin, 469 A.2d 358, 361 (R.I. 1983)

(citing Fuscellaro as viable in its refusal to apply discovery rule to negotiable instruments, while

extending discovery rule to latent construction defects).

The issue for decision here is whether the Rhode Island Supreme Court would overrule

its holding in Fuscellaro, which specifically declined to apply the discovery rule in determining

when the cause of action for conversion of negotiable instruments under the UCC accrues.

Section 3-420 of the UCC defines the moment of conversion of an instrument like a

check as occurring when "a bank makes or obtains payment with respect to the [check] for a

person not entitled to enforce the [check] or receive payment."  R.I. Gen. Laws § 6A-3-420(a).

Numerous cases construing the UCC around the nation have held that this language in Section 3-

420 sets the time of accrual of the cause of action for conversion of a negotiable instrument as

the time the bank cashes the check.  See, e.g., Rodrigue v. Olin Emps. Credit Union, 406 F.3d

434, 441 (7th Cir. 2005); AmerUS Life Ins. Co. v. Bank of Am., N.A., 49 Cal. Rptr. 3d 493, 499

(Cal. Ct. App. 2006); N.J. Lawyers' Fund For Client Prot. v. Pace, 863 A.2d 402, 405 (N.J.

Super. Ct. App. Div. 2005).

Section 3-118(g) was added to the UCC by the Rhode Island General Assembly in 2000. 2000 R.I. Pub. Laws ch. 238, § 3 & ch. 421, § 3.  It sets the statute of limitations for conversion of "an instrument" (such as a check), or "like action based on conversion," at three years "after the cause of action accrues."  R.I. Gen. Laws § 6A-3-118(g).  The Comments to Section 3-118(g) make clear that the time of the accrual of a claim for conversion of a check is defined in Section 3-420 and the circumstances under which the three-year statute of limitations may be tolled are left to state law.  Id. cmt. 1; R.I. Gen. Laws § 6A-1-103(b).  Fuscellaro fills in this gap in the UCC and supplies the state law that governs tolling in check conversion cases.

The Fuscellaro plaintiffs were payees on several checks that the defendant bank cashed over forged endorsements.  368 A.2d at 1229.  The checks were issued from 1964 to 1967, but the plaintiffs did not file suit until 1974, seven years after the bank cashed the last converted check and well outside of the then-applicable six-year statute of limitations.  Id.  The bilked payees sued the bank under R.I. Gen. Laws § 6A-3-419(1)(c), the UCC predecessor to Section 3-420, for cashing checks over forged endorsements and asked the court to toll the statute of limitations based on the discovery rule.  Fuscellaro, 368 A.2d at 1229-30; see also R.I. Gen. Laws § 6A-3-420 cmt. 1.

Because Section 3-419 (like the current Section 3-420) did not define whether tolling should apply in check conversion cases, the court looked to state common law to determine whether to apply the discovery rule.  Fuscellaro, 368 A.2d at 1230-31.  Fuscellaro began its analysis by focusing on whether fundamental fairness requires the application of the discovery rule to toll the statute of limitations for check conversion.  Id.  In medical malpractice cases, the balancing of the public interest in certainty against fairness to victims, whose ailments may not manifest themselves until after the statute of limitations has run, tipped in favor of applying the

discovery rule.  Id.  By contrast, in check conversion cases, the law presumes that property

owners know what and where their assets are; moreover, the finality of transactions promoted by

a clear period of liability "is essential to the free negotiability of instruments on which

commercial welfare so heavily depends."  Id. at 1231.  Thus, this balance tips in favor of finality

and certainty of obligations, which interests clearly outweigh the hardship imposed on the

property owner who has failed to discover an injury to ownership rights until after the statute of

limitations has run.  Id.  Fuscellaro holds that "a payee's action for conversion of a check must

be governed by the general rule that in the absence of fraud[4] by those invoking the statute of

limitations . . . conversion accrues at the time the defendant wrongfully exercises dominion,

regardless of the plaintiff's ignorance."  Id.

The Rhode Island Supreme Court has twice specifically reaffirmed Fuscellaro.  O'Coin v.

Woonsocket Inst. Trust Co., 535 A.2d 1263, 1266 (R.I. 1988); Lee, 469 A.2d at 361.  In Lee, the

Supreme Court amplified on its Fuscellaro rationale, explaining that its focus was on whether the

person has a reasonable opportunity to become cognizant of an injury:

> [U]nder the law of conversion, a property owner knows 'what and where their assets are.'
> And furthermore, the law of negotiable instruments requires a finality of transaction.
> Therefore, we held that a cause of action for conversion accrued at the time of
> conversion.

469 A.2d at 361 (citing Fuscellaro, 368 A.2d at 1231) (internal citations omitted).  Similarly in

O'Coin, the Supreme Court referred approvingly to Fuscellaro, noting, "we declined to apply the

discovery rule in an action against a bank for cashing checks upon forged endorsements, holding

that '[t]he finality of transactions promoted by an ascertainable definite period of liability is

---

[4] In Count VI, Plaintiffs accuse both Stephen and Citizens of criminal conversion.  The current pleading lacks any factual allegations to buttress this claim as to Citizens.  To the extent that Plaintiffs colorably allege that Citizens engaged in fraud, Fuscellaro is clear that the three-year statute of limitations does not apply.

essential to the free negotiability of [financial] instruments . . . .'" 535 A.2d at 1266 (citing Fuscellaro, 368 A.2d at 1231).

Fuscellaro has more generally been cited as a seminal case in Rhode Island on the topic of conversion. Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 97 (R.I. 2006); DeChristofaro v. Machala, 685 A.2d 258, 262 (1996); Baris v. Steinlage, No. 99-1302, 2003 WL 23195568, at *20 (R.I. Super. Ct. Dec. 12, 2003). Its soundness has further been affirmed by a number of other states that have adopted its reasoning or cited it in rejecting the discovery rule for the statute of limitations applicable to their version of the UCC.[5] Indeed, Fuscellaro is commonly cited as the decision that embodies the majority rule on the national UCC stage. For example, in Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476, 477-78 (Iowa 1990), the Iowa Supreme Court focused on the importance of uniform application of commercial law among the states and the presumption in favor of predictability and finality of commercial transactions. Relying on Fuscellaro, it held that the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees – strict application of the limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and "certainty of liability" advanced by the UCC. Id. at 479; see also N.J. Lawyers' Fund For Client Prot., 863 A.2d at 407 (adopting majority rule set out in Fuscellaro).

Plaintiffs argue that the replacement of Section 3-419 of the UCC with Section 3-420 in 2000, twenty-three years after Fuscellaro, somehow abrogates its central holding. The argument

---

[5] See, e.g., Menichini v. Grant, 995 F.2d 1224, 1231 (3d Cir. 1993); Rodrigue, 406 F.3d at 445 n.4; Kuwait Airways Corp. v. Am. Sec. Bank, N.A., 890 F.2d 456, 462 (D.C. Cir. 1989); Mandolfo v. Mandolfo, 796 N.W.2d 603, 610-11 n.23 (Neb. 2011); Pero's Steak & Spaghetti House v. Lee, 90 S.W.3d 614, 622 (Tenn. 2002); N.J. Lawyers' Fund For Client Prot., 863 A.2d at 407 n.7; Estate of Hollywood v. First Nat'l Bank of Palmerton, 859 A.2d 472, 482 (Pa. Super. Ct. 2004).

makes no sense; to the contrary, Section 3-420 is consistent with <u>Fuscellaro</u> in codifying that the conversion occurs when the bank makes payment on the check. R.I. Gen. Laws § 6A-3-420(a) ("An instrument is also converted if . . . a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment."). In any event, <u>Fuscellaro</u> was not an interpretation of some aspect of Section 3-419 that disappeared with the new enactment in Section 3-420. Rather, it simply supplies Rhode Island law on tolling the statute of limitations applicable to the conversion of negotiable instruments. It is noteworthy that none of the other states that similarly updated their versions of the UCC agreed with this argument when accepting <u>Fuscellaro</u> as the better reasoned approach reflecting what has become the majority rule. <u>See, e.g.</u>, <u>Mandolfo</u>, 796 N.W.2d at 609-11 n.23; <u>Estate of Hollywood</u>, 859 A.2d at 482.

Plaintiffs' primary argument[6] is based on a recent unreported decision from a federal court in Massachusetts, which was attempting to "make an informed prophecy" of how the Massachusetts Supreme Judicial Court would decide, if faced with this issue. <u>Fine v. Sovereign Bank</u>, No. 06-cv-11450-NG, 2010 WL 3001194, at *4 (D. Mass. July 28, 2010). In <u>Fine</u>, the court held that the discovery rule should apply to the conversion claims at issue in the case, while acknowledging that it was siding with the minority view and conceding that "the issue is hardly free from doubt." <u>Id.</u> at *5. <u>Fine</u> gives little weight to the important policy concerns described by <u>Fuscellaro</u> and the many cases that have followed its reasoning; instead, <u>Fine</u> holds that the Massachusetts Supreme Judicial Court would agree with Colorado, one of the few states that has

---

[6] Plaintiffs also rely on a bankruptcy case from the District of New Jersey. <u>DeHart v. First Fid. Bank, N.A.</u>, 67 B.R. 740 (Bankr. D.N.J. 1986). <u>DeHart</u> does not advance their cause. When a state court in New Jersey considered the issue, it rejected the holding of <u>DeHart</u> and adopted the majority rule as set out in <u>Fuscellaro</u>. <u>N.J. Lawyers' Fund for Client Prot.</u>, 863 A.2d at 406; <u>see also</u> <u>Menichini</u>, 995 F.2d at 1229-30 n.7 (rejects <u>DeHart</u>, holding that clear majority of jurisdictions addressing the issue reject application of the discovery rule to conversion of negotiable instruments).

adopted the discovery rule in this context.  Id. (citing Stjernholm v. Life Ins. Co. of N. Am., 782 P.2d 810, 811 (Colo. App. 1989)).  Fine makes no reference to Fuscellaro or to most of the many other cases that reject the discovery rule for converted checks based on policy considerations.  See Pero's Steak & Spaghetti House, 90 S.W.3d at 622-23 (listing cases, including Fuscellaro, that balance the competing policies and refuse to allow application of discovery rule in check conversion cases); Estate of Hollywood, 859 A.2d at 482 (same).  Rather, Fine points in an unnuanced fashion to the "expansive adoption of the discovery rule" in Massachusetts, where, Fine holds, it seems to have generalized to the point where it applies to all statutes of limitations.  2010 WL 3001194, at *4-5.

Plaintiffs contend that the Rhode Island Supreme Court has been as liberal in its application of the discovery rule as Massachusetts appears to be, as seen through the Fine prism.  This is simply wrong.  Indeed, one of the Rhode Island cases Plaintiffs cite in support of that proposition actually stands for the opposite conclusion.  In Lee, the Rhode Island Supreme Court specifically reaffirmed Fuscellaro because it is much easier for a person to discover a wrongfully converted negotiable instrument than for the owner of a house to discover defects before they became evident.  469 A.2d at 361.  Lee exemplifies Rhode Island's cautious approach to the discovery rule, limiting it to "narrowly circumscribed factual circumstances."  See Mills, 819 A.2d at 205.

This Court concludes that the Rhode Island Supreme Court would not overrule its own well-respected decision in Fuscellaro to adopt the Fine approach.  Rather, if faced with the argument Plaintiffs present here, it would remain firm in the view that the application of the discovery rule in UCC check conversion cases is "inimical to the underlying purposes of the [UCC], including the goals of certainty of liability, finality, predictability, uniformity, and

efficiency in commercial transactions" and that the public would be poorly served by a rule that effectively shifts responsibility away from those in the best position to monitor accounts and employees.  <u>Mandolfo</u>, 796 N.W.2d at 611; <u>Yarbro, Ltd. v. Missoula Fed. Credit Union</u>, 50 P.3d 158, 163 (Mont. 2002); <u>Pero's Steak & Spaghetti House</u>, 90 S.W.3d at 624.  Therefore, the discovery rule does not apply to Plaintiffs' untimely check conversion claims.

> ### B.    The Continuing Tort Doctrine

Alternatively, Plaintiffs contend that the continuing tort doctrine applies to their claims and refreshes their otherwise stale transactions.  Under the continuing tort doctrine, "where a tort involves a continuing or repeated injury, the limitations period is tolled and does not begin to run until the date of the last injury or the date the tortious acts cease."  <u>Shire Corp. v. R.I. Dep't of Transp.</u>, C.A. No. PB 09-5686, 2012 R.I. Super. LEXIS 32, at *35 (R.I. Super. Ct. Mar. 2, 2012) (quoting 54 C.J.S. <u>Limitation of Actions</u> § 223 (2011)).  According to this argument, Plaintiffs' Article 3 conversion claims did not ripen until April 5, 2011, when Citizens accepted the last converted check.[7]  In support, Plaintiffs point to <u>Shire</u>, which applied the continuing tort doctrine to tortious interference and constitutional claims.  2012 R.I. Super. LEXIS 32, at *31-40.  They also rely upon <u>Bartlett v. Fitts</u>, No. PC 00-2002, 2007 WL 1581475 (R.I. Super. Ct. May 17, 2007), which states in dicta in a footnote that the continuing tort doctrine should apply to Article 3 conversion claims.

Plaintiffs' reliance on <u>Bartlett</u> and <u>Shire</u> is misplaced.  <u>Fuscellaro</u> did not discuss the continuing tort theory explicitly; nevertheless, it holds that each converted check is a separate injury on which the statute of limitations begins to run from the moment the cause of action

---

[7] The discovery rule and the continuing tort doctrine operate in different ways: "the discovery rule tolls the statute of limitations until such time as the plaintiff knew or reasonably should have known that she has a cause of action for her injury, while the continuing violation rule effectively postpones the running of the statute of limitations until the tortious conduct has ceased."  <u>Rodrigue</u>, 406 F.3d at 444.

accrues.  See Fuscellaro, 368 A.2d at 1231 ("a payee's action for conversion of a check must be governed by the general rule that . . . a cause of action in conversion accrues at the time the defendant wrongfully exercises dominion") (emphasis added).  Fuscellaro's reference to the conversion of "a check" as a singular event was codified by the plain meaning of Section 3-118(g), which was adopted in 2000 and similarly refers to "an instrument" as opposed to a continuing series of instruments.  See R.I. Gen. Laws § 6A-3-118(g) ("an action . . . for conversion of an instrument . . . must be commenced within three years") (emphasis added).

Shire holds that the continuing tort doctrine applies "when no single incident in a chain of tortuous [sic] activity can fairly or realistically be identified as the cause of the significant harm." 2012 R.I. Super. LEXIS 32, at *35.  In Shire, the plaintiff alleged that the State made ongoing representations over time that cumulatively caused it to forego bidding on contracts.  Shire concluded that no single representation among the chain of ongoing representations could be identified as the singular act that caused significant harm.  Id. at *37-39.

Unlike the ongoing representations made by the State in Shire, the cashing of a check is a single incident that causes discrete harm.  Mindful that the UCC exists to foster uniformity in commercial transactions, this Court predicts that the Rhode Island Supreme Court would accept the reasoning of Rodrigue, 406 F.3d at 441-47, and Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc., 640 S.E.2d 102 (W. Va. 2006), as persuasive in finding that the better view is that each converted check inflicts discrete harm and in rejecting the continuing tort doctrine in check conversion cases.  Such a holding is consistent with Fuscellaro.  368 A.2d at 1231-32.

Rodrigue reasoned that the continuing violation rule is appropriate when a cause of action arises from a series of acts considered collectively, as opposed to individually identifiable

wrongs.  406 F.3d at 442.  The continuing tort doctrine does not apply, however, to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.  Id. at 443.  Unlike a cause of action, for example, like medical malpractice with its cumulative effects, or intentional infliction of emotional distress arising from a course of tortious acts as a whole, a cause of action for check conversion arises each time a check is cashed or deposited.  Id.  A claim for check conversion does not pose undue difficulty on identifying the nature, origin, and extent of the injury each time a check is converted.  Id.

Copier Word Processing reached the same conclusion in reliance on three grounds.  640 S.E.2d at 105-06.  First, check conversion does not create a continuing injury perpetuated by the tortfeasor's failure to take corrective action; rather, each conversion is a discrete act involving a specifically identifiable negotiable instrument.  Id. at 109.  Second, the plain text of Section 3-118(g)[8] of the UCC precludes the use of the continuing tort theory in check conversion cases because it applies the three-year statute of limitations to "an instrument."  The familiar usage of "an" is singular; thus, the clear legislative intent is "that each act of conversion be treated as a separate violation for limitations purposes."  Id. at 110.  Third, the continuing tort doctrine is contrary to the policies of the UCC, which militate strongly against open-ended liability on negotiable instruments.  To facilitate the transfer of funds efficiently and reliably, negotiability requires predictable and rapid collection through payment channels, coupled to commercial finality, certainty and quick and inexpensive resolution of commercial disputes.  Id. at 111-12. These important policies are advanced by a statute of limitations that permits a simple determination capable of resolution on the pleadings.  Id. at 112 (quoting Menichini, 995 F.2d at 1230-31).

---

[8] The operative text in R.I. Gen. Laws § 6A-3-118(g) is the same as W. Va. Code § 46-3-118(g).

Plaintiffs' other case, Bartlett, does not alter the analysis.  In Bartlett, the Rhode Island Superior Court addressed claims arising from the joint ownership of stock where dividend checks had been wrongfully cashed by the defendant.  Bartlett is decided on the accounting claim; the holding sidesteps conversion.  Nevertheless, in dicta in a lengthy footnote, Bartlett states that the continuing tort doctrine should apply to Article 3 conversion claims.  2007 WL 1581475, n.13.  This dicta is not persuasive because it relies on a case that had been thoroughly rejected:[9] Haddad's of Ill., Inc. v. Credit Union 1 Credit Union, 678 N.E.2d 322 (Ill. App. Ct. 1997).  By the time Bartlett cited it, the reasoning in Haddad's had been specifically rejected by the Illinois Court of Appeals in Kidney Cancer Ass'n v. N. Shore Cmty. Bank & Trust Co., 869 N.E.2d 186, 190-94 (Ill. App. Ct. 2007).  The Seventh Circuit had also explicitly rejected Haddad's two years earlier in Rodrigue, 406 F.3d at 441-44.  Kidney Cancer and Rodrigue both rejected Haddad's because it failed to grasp that each check conversion is a discrete act that causes a discrete harm.

For the reasons set out in Rodrigue and Copier Word Processing, and based on the plain language of UCC Section 3-118(g) and the UCC's goals of uniformity, certainty and finality – all of which were important factors in Fuscellaro, 368 A.2d at 1230-31 – this Court is persuaded that the Rhode Island Supreme Court would reject the continuing tort doctrine in check conversion cases.

## C.   UCC Displacement of Non-Conversion Counts in the Complaint

When a provision of the UCC applies to a commercial transaction, a litigant cannot avoid the UCC's effect simply by relying on non-UCC theories as alternative causes of action; this

---

[9] Bartlett also relies on Michael D. Osteen, Annotation, Payee's & Drawer's Right of Recovery in Conversion Under Pre-1990 U.C.C. § 3-419, or Post-1990 U.C.C. § 3-420 for Money Paid on Unauthorized Endorsement, 91 A.L.R. 5th 89, § 9 (2001).  Because the only case that the ALR cites in support of the continuing tort doctrine is Haddad's, it provides no additional support for the proposition that the continuing tort theory should apply to check conversion cases.

"displacement" principle assures that the uniformity that is at the core of the UCC is not undermined.  Adams v. Martinsville Dupont Credit Union, 573 F. Supp. 2d 103, 113 (D.D.C. 2008); C-Wood Lumber Co., Inc. v. Wayne Cnty. Bank, 233 S.W.3d 263, 281 (Tenn. Ct. App. 2007).  Section 1-103(b) of the UCC sets out the general standard for displacement of other law by the UCC.  R.I. Gen. Laws § 6A-1-103(b); Ciccone v. Pitassi, No. PB 97-4180, 2004 WL 2075120, at *10 (R.I. Super. Ct. Aug. 13, 2004) (quoting Equitable Life Assurance Soc'y v. Okey, 812 F.2d 906, 908 (4th Cir. 1987)).  Section 1-103(b) states:

> Unless displaced by the particular provisions of [the UCC], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

R.I. Gen. Laws § 6A-1-103(b).  In other words, when a provision of the UCC applies, a litigant cannot rely on other causes of action.  Mandolfo, 796 N.W.2d at 609.  To hold otherwise would render the UCC meaningless.  Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, 780 (E.D. Pa. 2008); see also Ciccone, 2004 WL 2075120, at *10 (section 3-419, the statutory predecessor to section 3-420, displaces a negligence cause of action); Promissor, Inc. v. Branch Bank & Trust Co., No. 08-cv-1704, 2008 WL 5549451, at *3 (N.D. Ga. Oct. 31, 2008) (negligence displaced); Mackin Eng'g Co. v. Am. Express Co., No. 10-cv-1041, 2010 U.S. Dist. LEXIS 108395, at *9-10 (W.D. Pa. Oct. 12, 2010) (breach of contract displaced); Gallagher v. Santa Fe Fed. Emps. Fed. Credit Union, 52 P.3d 412, 416 (N.M. Ct. App. 2002) (contract and negligence claims displaced).  Thus, when a simple check conversion claim is dismissed under the UCC, a complaint that is decorated with other common-law counts, such as negligence and breach of contract, is also subject to dismissal on the basis of displacement.  Otherwise, the careful

balances struck in Article 3 and 4 of the UCC are upset.  Jim Clark & Sons v. Capital One Fin. Corp., No. DV-07-156, 2008 Mont. Dist. LEXIS 234, at *15 (Mont. Dist. Ct. May 1, 2008).

In this case, displacement means that the UCC's statute of limitations in Section 3-118(g), which applies equally to conversion and a "like action based on conversion," operates to cut off Plaintiffs' claims arising from the conversion of stale checks not only under Count I, their claim for conversion, but also under Count II (negligence) and Count III (breach of contract).

Count IV of the Complaint, which is based on the Bank Secrecy Act, 31 U.S.C. § 5318, requires a slightly different displacement analysis.[10]  Unlike Plaintiffs' other causes of action, displacement of their Bank Secrecy Act claim, at first blush, raises Supremacy Clause concerns. However, 31 U.S.C. § 5318 does not have a statute of limitations for private litigants; indeed, it does not appear to support a private right of action.  In re Agape Litig., 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010); Hanninen v. Fedoravitch, 583 F. Supp. 2d 322, 326 (D. Conn. 2008).  When federal law lacks its own limitation period, federal courts typically look to state law to provide the statute of limitations.  See Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 462 (U.S. 1975); Santaliz-Rios v. Metro. Life Ins. Co., 693 F.3d 57, 59 (1st Cir. 2012).  UCC Section 3-118(g) is the most closely analogous statute of limitations; therefore, its three-year statute of limitations would bar Plaintiffs' 31 U.S.C. § 5318 claim to the extent that it is based on checks converted by Citizens more than three years prior to filing suit.

The potential impact of the UCC displacement principle on Count VI, which seeks to impose civil liability on Citizens based on criminal embezzlement and fraudulent conversion, is more complex.  R.I. Gen. Laws § 9-1-2 creates civil liability for the commission of any crime or offense, regardless of whether the State has filed a criminal action; it authorizes double damages

---

[10] This discussion may shortly become moot in that Plaintiffs have moved for leave of this Court to voluntarily dismiss Count IV.  See ECF No. 12.

against persons guilty of larceny.  Plaintiffs rely on R.I. Gen. Laws § 11-41-3 as the criminal

offense that gives rise to civil liability pursuant to § 9-1-2.  However, Plaintiffs' Complaint is

devoid of any factual allegation that Citizens engaged in fraud or embezzlement.  Thus, as

drafted, Court VI appears to be built on legal conclusions that would be vulnerable to dismissal

as a matter of law.  See Ashcroft v. Iqbal, 556 U.S. 662, 686-67 (2009).  Nevertheless, if

Plaintiffs were to adequately plead and prove that Citizens actively participated in Stephen's

fraudulent conduct, the discovery rule would likely apply to Plaintiffs' claims.  See Fuscellaro,

368 A.2d at 1231 (strict interpretation of statute of limitations in check conversion cases is

applicable only in the absence of fraud).

### D.   Certification to the Rhode Island Supreme Court

In light of the clear ongoing viability of the Rhode Island Supreme Court's controlling

authority in Fuscellaro, this Court declines Plaintiffs' invitation to certify the case to the

Supreme Court to determine whether the discovery rule or the continuing tort theory apply in

check conversion cases.  Plaintiffs base their request on Rule 6 of the Rules of Appellate

Procedure of the Rhode Island Supreme Court, which provides for certification of questions of

Rhode Island law "which may be determinative of a cause of action and as to which there is no

controlling precedent."  56 Assocs. ex rel. Paolino v. Frieband, 89 F. Supp. 2d 189, 191 (D.R.I.

2000).  "[A] district court may, in its discretion, and if authorized by local procedure, certify

important but difficult and unclear issues of applicable state law to a state's highest court."

Emhart Indus., Inc. v. Home Ins. Co., 515 F. Supp. 2d 228, 264 (D.R.I. 2007).  However,

certification is not appropriate when Rhode Island law and the "better reasoned authorities" from

other jurisdictions provide a clear path on state law for a federal court.  See 56 Assocs., 89 F.

Supp. 2d at 191.  Unless the matter is truly undecided, federal courts routinely decide the

applicability of the discovery rule to state-law statutes of limitations.  See Erlich, 637 F.3d at 37

(First Circuit, applying Maine law, declined to apply the discovery rule to Maine's general civil

statute of limitations in the context of claims against an auditor or actuary); Rohm & Haas Co. v.

Capuano, 301 F. Supp. 2d 156, 163 (D.R.I. 2004) (common-law discovery rule does not apply to

state-law fraudulent transfer cases).

Rhode Island law is clear regarding the statute of limitations applicable in check

conversion cases: Fuscellaro holds that the discovery rule does not apply and UCC Section 3-

118(g) provides, and Fuscellaro confirms, that the continuing tort rule does not apply.  The

better-reasoned authorities from other jurisdictions concur.  See 56 Assocs., 89 F. Supp. 2d at

191-94 (declining certification after examining the better-reasoned authorities from other

jurisdictions).  Since the UCC, by its own terms, is a "uniform" code, it would be inappropriate

for this Court to certify a question that has already been answered by the Rhode Island Supreme

Court.  See R.I. Gen. Laws § 6A-1-103(a)(3) (stating that one of the purposes of the UCC is "to

make uniform the law among the various jurisdictions").  Certification of this question to the

Rhode Island Supreme Court impliedly questions the precedential value of Fuscellaro, thereby

making the law less, not more uniform.  I decline the invitation.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that Defendant RBS Citizens, N.A.'s Motion for

Partial Judgment on the Pleadings (ECF No. 3) be GRANTED.  Claims based on checks

converted by Citizens more than three years prior to filing suit are barred by the applicable

statute of limitations.

Any objection to this Report and Recommendation must be specific and must be filed

with the Clerk of the Court within fourteen (14) days of its service.  See Fed. R. Civ. P. 72(b)(2);

DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  <u>See United States v. Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 27, 2012